IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

**STEVEN PAUL ADAMS**                                                                    **PLAINTIFF**

v.                                              Civil No. 4:14-cv-04117

**SHERIFF JAMES SINGLETON;**
**OFFICER MAX FIELD;**
**and OFFICER CODY AARON**                                                               **DEFENDANTS**


**MEMORANDUM OPINION**

This is a civil rights action filed by Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 17. Pursuant to this authority, I held a bench trial on April 14, 2016 and now issue the following findings of fact and conclusions of law.

1. **BACKGROUND**

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") Varner Unit. The events at issue here occurred while Plaintiff was a pre-trial detainee incarcerated at the Hempstead County Detention Center ("HCDC"). On June 27, 2014 Plaintiff was attacked by another inmate in his cell. As a result he suffered injuries to his face including a broken nose. After the attack Plaintiff claims other inmates prevented him from using the call button to request medical assistance. Plaintiff alleges Defendant Max Field was in the control room and saw Plaintiff's bloody and swollen nose through the cameras in C pod but did nothing to help him. Plaintiff claims Defendant Cody Aaron came into the pod and witnessed Plaintiff's injuries but

refused to do anything to help him.  Plaintiff also alleges Defendant Singleton is responsible because the HCDC was understaffed at the time Plaintiff was attacked which contributed in part to his injuries.  ECF No. 1.  According to Plaintiff, he did not receive proper medical attention for his injuries.

Defendants assert HCDC was not understaffed on June 27, 2014 and no one could have anticipated or prevented the attack on Plaintiff.  In addition, Defendants claim as soon as they were notified of the incident they moved Plaintiff to another pod to ensure his safety.  Defendants claim they provided adequate medical care to Plaintiff as soon as he requested assistance.

At the bench trial, the testimony of the following witnesses was heard:  (1) Plaintiff Steven Paul Adams; (2) Cecilia Bland; (3) Defendant Cody Aaron; (4) Heath Ross; and (5) Marsha Hardeman.

Plaintiff offered Exhibits 1 – 3, including:  (1) Plaintiff's Motion to Compel (ECF No. 5); (2) Defendant's Response to Plaintiff's Request For production of Documents; and (3) Defendant's Response to Plaintiff's Motion to Discover.  Exhibits 2 and 3 were admitted without objection.  Defendants objected to Exhibit 1.  Exhibit 1 was excluded based on the fact the document is part of the Court's record and is not a proper Exhibit for trial.

Defendants offered Exhibits 1 – 5, including:  (1) June 27, 2014 Incident Report DF14-0113 prepared Marcia Hardeman; (2) Inmate Medical Requests from July 1, 2014 – January 23, 2015; (3) Inmate Request Forms dated July 9, 2014 and July 15, 2014; (4) Wadley Regional Medical Center X-Ray Interpretation dated July 7, 2014; and (5) August 21, 2014 Prescription for Tylenol #3 from Oral & Maxillofacial Surgeons.  Defendant's Exhibits 1 – 4 were admitted without objection.  Plaintiff objected to Defendant's Exhibit 5 as not being relevant.  Exhibit 5 was admitted over Plaintiff's objection.

At the conclusion of Plaintiff's case in chief, Defense counsel made a motion to dismiss Plaintiff's claims. I granted the motion to dismiss all claims against Defendants James Singleton and Max Field for lack of evidence leaving only claims against Defendant Cody Aaron.

2. **FINDINGS OF FACT**

The following is a summary of the witnesses' testimony and my findings of fact:

**Plaintiff Steven Paul Adams**

Plaintiff was incarcerated at HCDC on June 27, 2014. He remembers eating between 10:30 and 11:00am and then going to sleep in his cell. He was awakened when his cell mate Chase Powell began punching him in the face. Another inmate pulled Powell off of Plaintiff. According to Plaintiff the other inmates would not allow him to push the intercom button to call for help when he left his cell. Plaintiff testified he sat out in C pod in view of two cameras hoping someone from HCDC would take notice of his injuries and remove him from the area. Usually the HCDC officers make hourly rounds to check on inmates. However, Plaintiff testified on the day he was attacked from 11:30am until 4:30 or 5:00pm he did not see any officers making rounds in C pod. Plaintiff testified Defendant Cody Aaron came down to serve dinner between 4:30 and 5:00pm and saw Plaintiff's bloody face and said "You are having a rough day" but did nothing to assist him. Sometime later around 6:30pm another inmate wrote a note to tell the officer on duty about the attack on Plaintiff and to let the officer know Plaintiff was scared and needed help. Plaintiff testified Officer Camacho helped him out of C pod. He was then taken to see Ms. Hardeman who asked him what had happened. She took Plaintiff back to B pod for the night. Plaintiff testified he requested the video tape from C pod on June 27, 2014 but was told the tape had not been saved because there was no reason to do so.

A few days went by and Plaintiff was moved to H pod. Plaintiff was not certain how many days passed – probably 3 to 4. When he asked about receiving medical care he was told he needed to fill out a medical request form. Plaintiff states he did not see any medical person until July 2, 2014 when the jail nurse came by and put Plaintiff on medicine to help the swelling of his face go down. He does not believe he received any medication until July 4, 2014. About a week after the attack Plaintiff went to the hospital for X-rays which indicated Plaintiff's nose was broken. He returned to HCDC and never heard anything more about it. He had trouble breathing through his nose and the nurse provided him with nasal spray. This was all the treatment Plaintiff received for his injuries.

Plaintiff testified Defendant Aaron was a good officer but he didn't make his regular rounds on June 27, 2014 because the jail was understaffed. When Defendant Aaron did finally see Plaintiff was injured between 4:30 and 5:00pm he did not remove him from C pod or do anything to assist him. Plaintiff stated Defendant Max Field was in control of the cameras covering C pod on June 27, 2014 and he failed to act to assist Plaintiff with his injuries. Plaintiff testified Defendant Sheriff Singleton failed to adequately staff the jail, failed to protect Plaintiff and failed to provide Plaintiff with adequate medical care.

Plaintiff admitted during cross-examination the guards at HCDC would not have any reason to know or believe his cell mate Chase Powell would attack him. He said the attack took between two to three minutes in his cell where there were no video cameras. Plaintiff stated he was afraid to "snitch" about the attack because the other inmates would be subjected to a lock down situation which would make them angry. He admitted as soon as the guards received the note from another inmate informing them of the attack he was removed from C pod.

For the most part I find Plaintiff to be credible.

**Cecilia Bland**

Ms. Bland works at HCDC. She testified she was on vacation the week the attack on Plaintiff occurred. She testified the day Plaintiff was attacked Defendants Field and Aaron were working along with Officer Mercado. She denied talking to Plaintiff about what had happened to him and testified she had never told Plaintiff what happened to him was the fault of Hempstead County.

I find Ms. Bland's testimony credible but not relevant to the issues before the Court.

**Defendant Cody Aaron**

Mr. Aaron is no longer employed with HCDC. He was working for HCDC on June 27, 2014 when Plaintiff was attacked. He testified he did not remember any specifics about that day. He does not remember seeing Plaintiff or speaking to him. In addition, he does not remember making hourly rounds. He does remember on June 27, 2014 Defendants Field and Officer Mercado were working at HCDC. Mr. Aaron said if he had been told Plaintiff was injured or if he had seen Plaintiff was injured he would have immediately removed Plaintiff from C pod and asked him what had happened. He did not believe the presence of additional guards would have prevented the attack on Plaintiff.

I find Defendant Aaron to be credible.

**Heath Ross**

Heath Ross is the Lieutenant over HCDC. On June 27, 2014 he was employed in the same position. He believes he may have been on vacation that day but even if he had been working he would not have been back in the area where Plaintiff was located. Mr. Ross testified there are no cameras in the individual cells but there were cameras in C pod where Plaintiff was after he was attacked. According to Ross, the live video feed from those cameras is not good and it is difficult

to see the individual faces of the inmates. He indicated the staff working on June 27, 2014 would not have been able to see Plaintiff's injuries through the cameras. It is his opinion Plaintiff should have asked to speak with an officer to receive help.

Mr. Ross testified the video tapes of C pod are automatically saved to a DVR for fifteen days and if there is no request or a reason to save the tapes they are recorded over. He indicated when he saves a video he can save it on a flash drive or a CD. Mr. Ross saw Plaintiff on the Monday June 30, 2014. He immediately noticed Plaintiff's black eyes and swollen face and asked him what had happened. Plaintiff told him he was attacked in his cell by another inmate but he did not complain or mention he was ignored while in C pod. Plaintiff also did not mention he tried to get the attention of the officers on duty the day of the attack. Ross stated if Plaintiff had told him that day about his complaints he would have reviewed the video from C pod and saved the tape if necessary. He testified the first time he heard anything about Plaintiff's complaints about the incident was from the attorneys for HCDC.

I find Heath Ross to be credible and will rely on his testimony.

**Marcia Hardeman**

Marcia Hardeman was the shift supervisor at HCDC on June 27, 2014. She came on duty at 6:00pm. She was shown Defendant's Exhibit 1 – HCDC Incident Report Incident Number DF14-0113 – and confirmed she had prepared the report relating to the attack and injuries sustained by Plaintiff. She testified as soon as Officer Camacho informed her Plaintiff needed help he was immediately removed from C pod and brought to her. Ms. Hardeman stated Plaintiff did not want to talk about what happened and he did not want to tell her the name of the inmate who attacked him. Ms. Hardeman could see Plaintiff's injuries. She testified the left side of Plaintiff's face was swollen but she did not see blood on his face. She noted on the Incident Report Plaintiff had

blood stains on his pants and a few blood stains on his sheets in his cell. She also noted Plaintiff did not want anything else to happen and he was scared. Ms. Hardeman testified Plaintiff only asked to be moved to another location for his safety. He did not ask for medical attention or ask to be seen by a doctor. She said Plaintiff told her he was ok and he did not want to go back to C pod. She agreed her report said Plaintiff's nose seemed to be off center and admitted she did not indicate in her report Plaintiff had refused medical attention. Ms. Hardeman denied Plaintiff had complained to her about being in C pod all day and no one helped him.

I find Marcia Hardeman to be credible and I will rely on her testimony.

3. **CONCLUSIONS OF LAW**

A. Official Capacity

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the Defendants acted under color of state law and that they violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants here are treated as claims against Hempstead County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Hempstead County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).
> *Id.* at 817-18.

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999  In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. It stated:

To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e*., that the custom was the moving force behind the constitutional violation.

*Id*., 725 F.3d at 828 (citations omitted).

There was no testimony or evidence presented to demonstrate the existence of an unconstitutional policy or custom of HCDC that contributed in any way to Plaintiff's injuries. Therefore, any claims against Defendants in their official capacity fail as a matter of law.

B. Failure to Protect

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998). For a pretrial detainee like Plaintiff, this duty arises under the Due Process Clause of the Fourteenth Amendment. *Kahle v. Leonard,* 477 F.3d 544, 550 (8th Cir. 2007). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

To prevail on his failure to protect claim, Plaintiff must satisfy a two prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate's health or safety.'" *Id. (quoting Farmers,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it."

*Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted). Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Whether an injury is sufficiently serious is "claim dependent." *Id.* at 447. "No clear line divides *de minimis* injuries from others." *Id.* In *Irving*, the inmate was assaulted by another inmate at the instigation of prison guards. He suffered injuries to his jaw and nose, which caused him difficulties in breathing for two months after the attack. *Id*. at 445. The Eighth Circuit held these injuries were sufficiently serious to support a failure to protect claim. *Id.* at 448. On the other end of the spectrum a scratch or cut on the cheek a plaintiff received when another inmate threw a chair at her which required only one pain pill for treatment was a *de minimis* injury. *Chavero-Linares*, 2013 WL 5655559, *8 (N.D. Iowa 2013).

Several Circuits have utilized the test enunciated in *Luong. v. Hatt*, 979 F. Supp. 481, 486 (N.D. Texas Sept. 11, 1997) to evaluate the seriousness of the injury. In analyzing an Eighth Amendment failure to protect claim, the court first noted that *Siglar v. Hightower*, 112 F.3d 191 (5th Cir 1997) provided no definition of a physical injury or a *de minimis* injury pursuant to 1997e(e). *Id.* at 486. It then stated a physical injury is:

> an observable or diagnosable medical condition requiring treatment by a medical professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc. which lasts even up to two or three weeks.. . . Injuries treatable at home  [by a free world citizen]  and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e). . .

*Id.*; *See also Perez v. United States*, 330 Fed. App'x. 388, 389 (3d Cir. 2009) and *Jarriett v. Wilson*, 162 Fed. App'x. 394, 401 (6th Cir. 2005) (using the *Luong* test).

The Ninth Circuit found the *Luong* test required "too much," but also held "any injury" is "too little" as an injury requirement. *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir 2002.)

I am convinced Plaintiff suffered a sufficiently serious injury in this case. He was attacked by his cell mate and as a result sustained a broken nose and two black eyes. His face was so swollen he had to wait at least ten days after the attack to have his nose x-rayed. The x-ray films confirmed his nose was in fact broken. Plaintiff also testified he had trouble breathing in the days after the attack.

Even though Plaintiff suffered a sufficiently serious injury, in order to prevail on a failure to protect claim he must: (1) prove he was incarcerated under conditions posing a substantial risk of serious harm and (2) prove Defendants were deliberately indifferent to his health or safety. *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011). There is no evidence Plaintiff was incarcerated under conditions posing a substantial risk of serious harm or Defendant Aaron was deliberately indifferent to Plaintiff's health or safety prior to the attack. There had been no previous incidents or disputes between Plaintiff and his cell mate Chase Powell. In fact, Plaintiff testified there was no reason for any other guard to think inmate Powell would attack Plaintiff. Therefore, Plaintiff's failure to protect claim against Defendant Aaron fails and is dismissed.

C. Denial of Medical Care

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) (citing *Estelle v. Gamble*), 429 U.S. 97, 103 (1976)). The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims including those by a pretrial detainee. *Carpenter v.*

*Gage*, 686 F.3d 644, 650 (8th Cir. 2012). The deliberate indifference standard has both an objective and a subjective component. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). A plaintiff must demonstrate (1) he suffered an objectively serious medical need; and (2) the defendant actually knew of the medical need but, subjectively, was deliberately indifferent to it. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006).

As previously stated, Plaintiff's injuries constitute an objectively serious medical need. The only remaining question is whether Plaintiff has demonstrated Defendants "actually knew of, but deliberately disregarded, a serious medical need". *Thompson v. King*, 730 F.3d 742, 746-47 (8th Cir. 2013) (internal quotation marks and citation omitted). In other words, Plaintiff must establish "a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Id.* at 746-47.

This standard is not met by the exercise of professional judgment in refusing to implement an inmate's requested course of treatment. *Vaughn v. Gray*, 557 F.3d 904, 908-09 (8th Cir. 2009). To constitute deliberate indifference, "[a]n inmate must demonstrate that a prison doctor's actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Id*. However, intentionally denying or delaying access to medical care may constitute deliberate indifference. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Plaintiff testified after the attack occurred around 11:00am he sat in view of the cameras in C pod so that an officer could see his injuries and help him. The record shows Plaintiff was not removed from C pod until approximately 7:00pm when another inmate gave a note to Officer Camacho letting him know Plaintiff needed help and was scared.

Ms. Hardeman testified as soon as Officer Camacho informed her Plaintiff needed help he was immediately removed from C pod and brought to her. Plaintiff did not want to talk about what happened and he did not want to tell her the name of the inmate who attacked him. She testified the left side of Plaintiff's face was swollen but she did not see blood on his face. At that time Plaintiff did not ask for medical attention or ask to be seen by a doctor. According to Ms. Hardeman, Plaintiff told her he was ok and he did not want to go back to C pod. Plaintiff was then moved to B pod for his safety that night.

According to Heath Ross the video cameras in C pod are not clear and it is difficult to see the faces of inmates with any clarity. He also testified the video tape in C pod on the day Plaintiff was attacked was not saved because the attack itself took place in Plaintiff's cell where there were no cameras. Mr. Ross saw Plaintiff on Monday, June 30, 2014 three days after Plaintiff was attacked. He noticed Plaintiff's black eyes and swollen face and asked him what had happened. At that time Plaintiff did not complain or mention he was ignored while in C pod or that Defendant Aaron failed to treat Plaintiff's injuries.

The first time Plaintiff submitted a medical request was July 1, 2014 when he said his nose was broken and he would like to have it fixed. Plaintiff was examined by the HCDC nurse the next day and prescribed medication to help reduce the swelling of his face. Plaintiff does not believe he received any medication until July 4, 2014. On July 7, 2014 Plaintiff was taken to the hospital for x-rays which indicated Plaintiff sustained a nondisplaced fracture of the nasal bone. On July 21, 2014 Plaintiff submitted a second medical request indicating his broken nose was causing him to have difficulty breathing and his nose was moving around. On July 25, 2014 Plaintiff submitted a third medical request again stating he was having a lot of trouble breathing at night, he would wake up gasping for air and his nose was still bleeding.

Although there was some delay in the medical care provided to Plaintiff after June 27, 2014, there is no evidence in the record Defendant Aaron was responsible for that delay. Having carefully considered the testimony of the witnesses and the exhibits, I conclude Plaintiff has failed to demonstrate any Defendant was deliberately indifferent to his serious medical condition.

### 4. **CONCLUSION**

For the reasons stated, Plaintiff's claims against each Defendant are dismissed with prejudice. A separate judgment in accordance with this opinion will be entered.

**DATED this 10th day of May 2016.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE